**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KRISTIN ELLEN MOREAU, : | | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-00396 (JCH) |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, Acting | : | MARCH 13, 2018 |
| Commissioner, Social Security | : | |
| Administration, | : | |
| Defendant. | : | |

**RULING RE: MOTION TO REVERSE THE DECISION OF THE COMMISSIONER
(DOC. NO. 20) AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER
(DOC. NO. 23)**

## I.    INTRODUCTION

Plaintiff Kristin Ellen Moreau brings this action under sections 405(g) and

1383(c)(3) of title 42 of the United States Code, appealing from the final decision of the

Commissioner of the Social Security Administration ("SSA"), which denied her

application for Title II disability insurance benefits and Title XVI supplemental security

income.  See Complaint ("Compl.") (Doc. No. 1) at 1.  Moreau seeks either reversal or

remand of the Decision rendered by Administrative Law Judge ("ALJ") Louis

Bonsangue, which affirms the Commissioner's denial.  See Motion to Reverse or

Remand the Decision of the Commissioner ("Mot. to Reverse") (Doc. No. 20).  The

Commissioner cross-moves for an order affirming that Decision.  See Motion to Affirm

the Decision of the Commissioner ("Mot. to Affirm") (Doc. No. 23).

For the reasons set forth below, the Motion to Reverse or Remand the Decision

of the Commissioner is **GRANTED**.  The Motion to Affirm the Decision of the

Commissioner is **DENIED**. This case is remanded to the ALJ for proceedings consistent with this Ruling.

## II.    Procedural History[1]

Moreau applied for disability and supplemental security income benefits on March 20, 2014. See Stipulated Statement of Facts ("Stip. Facts") (Doc. No. 21) at 1. The Commissioner denied Moreau's application initially on August 29, 2014, and upon reconsideration on December 15, 2014. See id. Moreau requested a hearing with an ALJ, which was held before ALJ Bonsangue on February 10, 2016. See id.

On May 25, 2016, ALJ Bonsangue issued an unfavorable Decision for Moreau, affirming the Commissioner's denial and finding that Moreau was not disabled. See id.; Certified Transcript of Record ("Tr.") (Doc. No. 13) at 27–40. Specifically, ALJ Bonsangue found that, while Moreau cannot perform any past relevant work, there are jobs that exist in significant numbers in the national economy that Moreau can perform based on her residual functional capacity. See Tr. at 38–40. Moreau requested review by the Appeals Court, and the Appeals Court denied the request on January 6, 2017. See Stip. Facts at 1. Following that denial, ALJ Bonsangue's May 25, 2016 Decision became a final decision reviewable by this court. See id. at 1–2. Moreau then filed this appeal on March 8, 2017. See Compl.

## III.    FACTS

The court adopts the facts as stated in the Stipulated Statement of Facts, to which both parties have agreed. See Stip. Facts. Where the Stipulated Statement of

---

[1] The procedural history set forth herein is derived from the Stipulated Statement of Facts to which both parties have agreed. See Stipulated Statement of Facts ("Stip. Facts") (Doc. No. 21).

Facts was incomplete, the court draws additional facts from the Certified Transcript of the Record. See Tr. Only those facts relevant to the issues raised in the Motions before the court are set forth below.

Moreau was born in 1971 and was 41 years old at the alleged date of onset of disability, January 31, 2013. See id. at 1, 3. Her past relevant work includes employment as a server in a country club, day laborer and landscaper, data entry specialist and receptionist, resort manager, housekeeper, and restaurant manager. See id. at 3. The ALJ found that Moreau suffered from severe impairments including a seizure disorder, an organic mental disorder, and post-traumatic stress disorder, as well as a non-severe impairment of intracranial injury caused by a fall that occurred in 2013. See Tr. at 30. The parties do not dispute the ALJ's findings as to Moreau's medically determinable impairments. Moreau had surgery to perform a right craniotomy after the intracranial injury in 2013. See id. at 505. In February 2015, the wound was infected, and the bone flap was removed. See id.

Moreau testified that, after the fall, she received physical therapy, speech therapy, and memory therapy. See Stip. Facts at 11. She also received mental health treatment for PTSD and anxiety until November 2015, when her treating psychiatrist passed away. See id. She testified that she suffers from seizures approximately once a month and treats her seizures with anticonvulsant medication. See id. She also testified that she experiences "extreme weakness" on her right side and has difficulty with balance. See id. at 12. She testified that, as a result, she uses a cane when leaving home and while at home, but she did not have a cane at the hearing because she indicated that it was broken. See id.

A.    Medical Opinion Evidence

Moreau received follow-up treatment for her seizures and her craniotomy from St. Francis Medical Group Stroke Center ("St. Francis").  See id. at 10.  Two of the doctors who provided her follow-up treatment were Dr. Bruce Chozick, MD, and Dr. Arjuna Mannam, MD.  See Tr. at 410–33.  The record includes progress notes from Dr. Chozick and Dr. Mannam, but no signed medical opinion from either.  See id.  The record does include two unsigned disability certificates from St. Francis.  See Stip. Facts at 10; Tr. at 419–21.

The first disability certificate, dated March 7, 2014, states, "Kristin had brain surgery and is unable to work untill [sic] further notice.  12/20/2014 [Patient] had a Stroke and is taking medication Kepra and Percocet as well."  Tr. at 419, 421.  The second disability certificate, dated August 5, 2014, states, "[Patient] has no neurosurgical issues, and does not require a follow up.  [Patient] is not currently under the care of neurosurgery, and has not had any recent surgery.  We cannot comment on her ability to take care of her child."  Tr. at 420.  The ALJ accorded partial weight to both unsigned opinions.  See id. at 37.

Additionally, Moreau underwent two consultative examinations, one by Dr. Eric Frazer, PsyD, and one by Dr. April McLean, PsyD.  See Stip. Facts at 7–10.  Dr. Frazer saw Moreau on January 14, 2013, as part of a child services case to determine whether Moreau could act as a guardian for her son.  See id. at 7.  Dr. Frazer found that Moreau suffered from post-traumatic stress disorder and dysthymic disorder and assigned her a Global Assessment of Functioning ("GAF") score of 60, which indicates moderate symptoms and impairment.  See id. at 8.  He concluded that she could be reunited with

4

her son once she obtained sufficient housing and income.  See id. at 8.  The ALJ

accorded little weight to Dr. Frazer's opinion.  See Tr. at 37–38.

Dr. McLean interviewed Moreau, reviewed her records, and conducted a

psychological assessment on July 23, 2014.  See Stip. Facts at 8–9.  Dr. McLean

diagnosed mild neurocognitive disorder due to brain injury and scored Moreau to be

"low average" in immediate memory, "borderline" in visuospatial/constructional ability

and language, and "extremely low" in attention and delayed memory.  See id. at 9–10.

Dr. McLean opined that Moreau "appeared to have neurocognitive limitations, including

affect lability, concentration difficulties, and language impairments that affect her ability

to maintain . . . a 40 hour work week."  Stip. Facts at 10 (quoting Tr. at 407).  The ALJ

accorded partial weight to Dr. McLean's opinion.  See Tr. at 36–37.

Finally, two non-examining state medical consultants and two non-examining

state psychological consultants reviewed Moreau's available medical evidence and

completed a residual functional capacity assessment.  See Stip. Facts at 4–7.  Dr. Earle

Sittambalam, MD, opined that Moreau had no exertional limitations, could never climb

ladders, ropes, or scaffolds, could frequently balance, could occasionally crawl, and

should avoid concentrated exposure to noise or vibration and even moderate exposure

to hazards.  See id. at 4.  Dr. Barbara Coughlin, MD, reached the same conclusion as

Dr. Sittambalam, except that she opined that Moreau should avoid all exposure to

hazards.  See id.  Dr. Kirk Johnson, PsyD, opined that Moreau had moderate limitations

in understanding and memory, sustained concentration and persistence, social

interaction, and adaptation.  See id. at 5.  Dr. Janine Swanson, PsyD, concluded that

Moreau had the same limitations in understanding and memory, as well as sustained

concentration and persistence, as Dr. Johnson.  <u>See</u> <u>id.</u>  Unlike Dr. Johnson, though,

she opined in one part of her report that Moreau had only mild restrictions in social

functioning.  <u>See</u> <u>id.</u> at 6; Tr. at 139.  Elsewhere in her report, she stated that Moreau

had no limitations in social interaction.  <u>See</u> Stip. Facts at 7; Tr. at 143, 158.  The ALJ

accorded partial weight to all four of the state consultants' opinions without

distinguishing between them.  <u>See</u> Tr. at 37.

## IV.    STANDARD OF REVIEW

Under section 405(g) of title 42 of the United States Code, it is not a function of

the district court to review <u>de novo</u> the ALJ's decision as to whether the claimant was

disabled.  <u>See</u> <u>Schaal v. Apfel</u>, 134 F.3d 496, 501 (2d Cir. 1998).  Instead, the court

may only set aside the ALJ's determination as to social security disability if the decision

"is based upon legal error or is not supported by substantial evidence."  <u>Balsamo v.</u>

<u>Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998).  Substantial evidence requires "more than a

mere scintilla," but is a "very deferential standard of review."  <u>Brault v. Soc. Sec. Admin.,</u>

<u>Comm'r</u>, 683 F.3d 443, 447–48 (2d Cir. 2012).  It requires "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  If the

Commissioner's findings of fact are supported by substantial evidence, those findings

are conclusive, and the court will not substitute its judgment for the Commissioner's.  42

U.S.C. § 405(g) (2016); <u>see also</u> <u>Yancey v. Apfel</u>, 145 F.3d 106, 111 (2d Cir. 1998).

## V.    DISCUSSION

Section 404.1520 of title 20 of the Code of Federal Regulations lays out a five-

step sequential evaluation process for determining whether an individual claimant is

disabled.  <u>See</u> 20 C.F.R. § 404.1520 (2017).

First, the Commissioner of Social Security considers whether the claimant is currently engaged in "substantial gainful activity." If he is not, the Commissioner proceeds to the second step and determines whether the claimant has a "severe medically determinable physical or mental impairment," that "significantly limits his physical or mental ability to do work activities." If the claimant does suffer such an impairment, the third step is "whether, based on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations." If so, the claimant is per se "disabled" and thus presumptively qualified for benefits. If not, the Commissioner proceeds to the fourth step and examines whether, "despite the claimant's severe impairment, he has the residual functional capacity to perform his past work." If the claimant is unable to perform his past work, the Commissioner finally determines whether there is other work the claimant can perform, taking into consideration the claimant's RFC, age, education, and work experience.

Petrie v. Astrue, 412 Fed. App'x 401, 404 (2d Cir. 2011) (internal citations omitted).

In this case, the ALJ found that the first two steps of the sequential evaluation were satisfied—that Moreau had not engaged in substantial gainful employment since January 31, 2013, and that Moreau suffered from three severe impairments: a seizure disorder, an organic mental disorder, and post-traumatic stress disorder. See Tr. at 29–30. The ALJ then found at step three that Moreau's impairments, though severe, did not meet or medically equal a listed impairment, specifically considering Listings 11.02, 12.02, and 12.06. See id. at 30–33. The ALJ next assessed the following residual functional capacity ("RFC"):

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs. The claimant can never climb ropes, ladders, or scaffolds. The claimant can frequently balance. The claimant can occasionally crawl. The claimant must avoid concentrated exposure to moderate noise levels and vibration. The claimant must avoid all exposure to any work hazards such as moving mechanical parts or unprotected

> heights.  The claimant is limited to simple, routine, repetitive
> tasks and not at any production rate pace with only minimal
> changes in the work routine on a day-to-day basis.

Id. at 33.  Finally, under steps four and five, the ALJ determined that Moreau was not able to perform any past relevant work, but could perform other jobs that exist in significant numbers in the national economy.  See id. at 38–39.

Moreau argues that the ALJ's Decision should be reversed or remanded for a number of reasons relating to the ALJ's determination of her RFC.  First, she argues that the ALJ failed to adequately develop the administrative record by not seeking the identity of the unsigned opinions, which she contends were likely authored by Dr. Mannam, a treating source.  See Memorandum in Support of Mot. to Reverse ("Mot. to Reverse Mem.") (Doc. No. 20-1) at 3–6.  Second, Moreau presents several arguments that the ALJ's weighing of the medical opinion evidence was not supported by substantial evidence.  See id. at 6–9.  She argues that the ALJ failed to articulate good reasons for not giving controlling weight to the unsigned opinions, which she contends might have been treating source opinions had the ALJ contacted St. Francis to identify the author.  See id. at 6–7.  She also argues that the ALJ erred in assigning only partial weight to Dr. McLean's opinion because the opinion is consistent with the medical record. See id. at 8–9.  She further argues that the ALJ failed to address the conflict between Dr. Johnson's opinion and Dr. Swanson's opinion regarding the existence of limitations in social functioning.  See id. at 9.  Third, Moreau argues that, by discounting all of the medical opinion evidence, the ALJ played doctor in interpreting the raw medical data on his own.  See id. at 7.  Finally, Moreau argues that the RFC was not supported by substantial evidence because the ALJ failed to account for her use of a cane.  See id. at 10–11.

The court focuses its Ruling on Moreau's argument pertaining to the unsigned opinions and the ALJ's duty to develop the record. Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own. See, e.g., Fly v. Colvin, No. 3:14-CV-1840, 2015 WL 5124957, at *5 (N.D. Ind. Aug. 31, 2015) (requiring the ALJ to inquire into the availability of low-cost treatment on remand without reaching whether the failure to do so itself requires remand because the case was already being remanded for other reasons); Waltemire v. Colvin, No. 13-CV-1283-DDC, 2014 WL 3809189, at *12 (D. Kan. Aug. 1, 2014); Lowe v. Colvin, No. 2:12-CV-524-PRC, 2014 WL 4373637, at *8 (N.D. Ind. Sept. 3, 2014).

A.    Duty to Develop the Record

An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). Whether the ALJ has satisfied this obligation or not "must be addressed as a threshold issue." Downes v. Colvin, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015); see Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982) ("[I]n deciding whether the Secretary's conclusions . . . are supported by substantial evidence, which is the test on review, . . . we must first satisfy ourselves that the claimant has had 'a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.'" (citations omitted)).  "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." Downes, 2015 WL 4481088, at *12.

9

Although the ALJ's obligation to develop the record is heightened where the plaintiff is pro se, see Echevarria, 685 F.2d at 755, the "non-adversarial nature" of social security benefits proceedings dictates that the obligation exists "even when . . . the claimant is represented by counsel." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' . . . ." (quoting Echevarria, 685 F.2d at 755)). Thus, the ALJ may not merely rely on the claimant's attorney to satisfy the ALJ's duty to develop the record. See, e.g., Harris v. Colvin, No. 11-CV-1497, 2013 WL 5278718, at *7–*8 (N.D.N.Y. Sept. 18, 2013) (noting "with frustration" claimant's counsel's failure to provide documents as promised, but nevertheless concluding that "the ALJ's reliance on claimant's counsel to obtain the treating physician records was inadequate").

The expert opinions of a treating physician are of particular importance to a disability determination. See Hallet v. Astrue, No. 3:11-cv-1181, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) ("Because the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ simply to secure raw data from the treating physician."). "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is his opportunity to develop an informed opinion as to the physical status of the patient." Id. Because of this, treating physicians are accorded a higher degree of deference than other medical sources under the treating physician rule, which requires that a treating source's medical opinion be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the]

case record." 20 C.F.R. § 416.927(c)(2) (2017). Even if controlling weight is not given,

"some weight may still be attached to that opinion, and the ALJ must still designate and

explain the weight that is actually given to the opinion." Schupp v. Barnhart, No.

3:02CV103 (WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004).

Here, it is ambiguous as to whether the record contained a treating source

opinion because the two disability certificates from St. Francis, which the ALJ refers to

as "opinions," are unsigned. See Stip. Facts at 10; Tr. at 37. The Stipulated Statement

of Facts acknowledges that Moreau received treatment at St. Francis. See Stip. Facts

at 10. However, the ALJ, in according partial weight to the opinions, did not consider

them to be treating source opinions because he stated that "it is unclear whether the

source of the opinion was an acceptable medical source, a specialist, or a provider who

evaluated the claimant on numerous occasions."[2] Tr. at 37.

Moreau argues that the unsigned opinions should have been considered treating

source opinions because "it is extremely likely that this opinion came from treating

physician and neurologist Dr. Mannam."[3] See Mot. to Reverse Mem. at 5. The opinion

---

[2] Only an "acceptable medical source" can be considered a treating source. Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies ("SSR 06-03p"), 2006 WL 2329939, at *2 (Aug. 9, 2006); see also 20 C.F.R. § 404.1527(a)(2) (2016) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources . . . ."). Thus, an opinion from someone who provides treatment, but is not an acceptable medical source, is not subject to the treating source rule.

The court notes that SSR 06-03p has since been rescinded, effective March 27, 2-17. Rescission of Social Security Rulings 96-2P, 96-5P, and 06-3P, 2017 WL 3928305 (Mar. 27, 2017). However, SSR 06-03p was in effect at the time of the ALJ's Decision in 2016, and therefore still applies to the court's review.

[3] The Commissioner does not dispute that Dr. Mannam would be a treating source if the opinion were authored by him. See Memorandum in Support of Motion to Affirm ("Mot. to Affirm Mem.") (Doc. No. 23-1) at 8–9.

is from St. Francis, where Moreau was treated by Dr. Mannam. <u>See</u> Tr. at 419–20. The opinion has an encounter date of February 26, 2014, at 11:30 AM, and the progress notes of Dr. Mannam indicate that he saw Moreau on that same date and time. <u>See</u> Tr. at 415–17; 419–20. The Commissioner notes, however, that Moreau's argument focuses on the opinion dated March 7, 2014, which is favorable to her, but overlooks the opinion dated August 5, 2014, which is not.[4] <u>See</u> Memorandum in Support of Motion to Affirm ("Mot. to Affirm Mem.") (Doc. No. 23-1) at 8.

The court need not decide whether these indicators were sufficient for the ALJ to conclude that the unsigned opinions were authorized by Dr. Mannam. Given the ambiguity, it would have been prudent for the ALJ to contact St. Francis to determine the source of the opinion. However, the court does not rest its decision merely on the ALJ's failure to investigate the source of the opinion. Rather, remand is warranted because the ALJ failed to develop the record in either case—whether the unsigned opinions are considered treating source opinions or not. If the Commissioner is correct and the unsigned opinions are appropriately considered non-treating source opinions, the record contained no treating source opinion on Moreau's RFC, and the ALJ erred by not failing to obtain one. If Moreau is correct and the unsigned opinions should have been evaluated as treating source opinions, the ALJ erred by not recontacting the treating source to obtain support and explanation for the source's ultimate conclusion

---

[4] The fact that the unsigned opinions differed and Moreau focused her discussion on the opinion more favorable to her claim does not alter the court's below analysis of the ALJ's duty to develop the record. The ALJ did not distinguish between the two opinions when he discounted them and gave them partial weight. <u>See</u> Tr. at 37. The ALJ treated neither opinion as a treating source opinion. <u>See</u> <u>id.</u> The ALJ also noted that neither opinion provides a function-by-function assessment of Moreau's limitations. <u>See</u> <u>id.</u> Therefore, the court's below analysis applies equally to both opinions, whether favorable to Moreau or not.

that Moreau was disabled.  Under either categorization of the unsigned opinions,

remand is warranted for the ALJ to fully develop the record.

1.    If the Unsigned Opinions Are Not Considered Treating Source
Opinions

According to the ALJ, he did not treat the unsigned opinions as treating source

opinions because, unable to identify the source of the opinion, he could not be sure

whether the opinion was authored by an acceptable medical source or a provider who

had evaluated the claimant on numerous occasions.  See Tr. at 37.  Assuming,

arguendo, that the ALJ did not err in so concluding, there was then no treating source

opinion in the record that he could have considered in formulating the RFC.  Rather, he

weighed the opinions of the two examining sources, Dr. McLean and Dr. Frazer, and the

four non-examining sources, Dr. Sittambalam, Dr. Coughlin, Dr. Johnson, and Dr.

Swanson.  See id. at 36–38.  He also weighed the GAF score given by Dr. Frazer as an

opinion in itself.  See id. at 38.  In so doing, he gave partial weight to Dr. McLean and

the four non-examining state consultants and little weight to Dr. Frazer and the GAF

score.  See id. at 36–38.

As noted above, the opinion of the treating physician is of particular importance

to the determination of disability, including the claimant's RFC.  See Hallet, 2012 WL

4371241, at *6 (distinguishing the perspective of the treating physician from that of an

examining physician).  Because of this, a number of courts in this Circuit have

remanded where the ALJ failed to obtain a medical opinion from any of the claimant's

treating physicians.  See, e.g., Swanson v. Colvin, No. 12-CV-645S, 2013 WL 5676028,

at *5 (W.D.N.Y. Oct. 17, 2013) ("Absent a reasonable explanation for the failure to

obtain an RFC assessment from any treating source, the Court cannot conclude that the

ALJ fulfilled her affirmative duty to develop the record. Accordingly, the matter is remanded."); Ayer v. Astrue, No. 2:11-CV-83, 2012 WL 381784, at *3 (D. Vt. Feb. 6, 2012) ("[T]he Court finds that remand is required, given the ALJ's failure to request medical opinions from any of Ayer's treating providers, . . . which resulted in a substantial gap in the record.").

However, "the Second Circuit has held that it is not per se error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician." Sanchez v. Colvin, No. 13 CIV. 6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) (citing Tankisi v. Comm'r of Soc. Sec., 521 Fed. App'x 29, 33–34 (2d Cir. 2013)). In Tankisi, the Second Circuit stated that "remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." Tankisi, 521 Fed. App'x at 34. The Tankisi court described the record in that case as "quite extensive" and "voluminous." Id. Notably, "although it [did] not contain formal opinions on Tankisi's RFC from her treating physicians, it [did] include an assessment of Tankisi's limitations from a treating physician." Id. Therefore, the Tankisi court concluded that remand was not necessary because the voluminous record permitted the ALJ to make an "informed finding" without a formal opinion from the treating source. See id. Courts have distinguished Tankisi and remanded, however, where "the medical record available to the ALJ is not 'robust' enough to obviate the need for a treating physician's opinion." Hooper v. Colvin, 199 F. Supp. 3d 796, 815 (S.D.N.Y. 2016); see also Downes, 2015 WL 4481088, at *15; Sanchez, 2015 WL 736102, at *5–*9.

The question before the court, then, is "whether, given the specific facts of this case, the administrative record before the ALJ . . . , although lacking the opinion of [a] treating physician, was sufficiently comprehensive to permit an informed finding by the ALJ." Sanchez, 2015 WL 736102, at *6 (internal quotation marks and citation omitted). The approach to this question "focuses on circumstances of the particular case, the comprehensiveness of the administrative record, and, at core, whether an ALJ could reach an informed decision based on the record." Id. at *5 (citing Tankisi, 521 Fed. App'x at 33).

In this case, the Commissioner argues that the medical evidence in the record was sufficient for the ALJ to assess Moreau's RFC without obtaining a treating source opinion. See Mot. to Affirm Mem. at 15–16. The Commissioner argues that the ALJ relied on "numerous medical records and activities of daily living showing that Plaintiff retained the capacity for a reduced range of light work." Id. at 15. For example, the Commissioner points specifically to the fact that Moreau told her doctor that she rides motorcycles and that the emergency room physician reported that her pain complaints were motivated by a desire to obtain pain medication. See id. The Commissioner argues, then, that no treating source opinion on RFC was necessary because there were no gaps in the record. See id. at 15–16.

However, there are a number of reasons to distinguish Moreau's case from Tankisi and others that have upheld the ALJ's decision despite the absence of a treating source opinion. First, the Second Circuit noted in Tankisi that the treating physician had provided an informal assessment of Tankisi's limitations, even though the record did not contain that physician's formal opinion of Tankisi's RFC. See Tankisi, 521 Fed. App'x at

15

34.  Some courts have therefore distinguished <u>Tankisi</u> and remanded for development

of the record in cases where the treating physician's notes did not include an informal

assessment of the claimant's RFC.  <u>See</u> <u>DeLeon v. Colvin</u>, No. 3:15-CV-01106 (JCH),

2016 WL 3211419, at *4 (D. Conn. June 9, 2016) ("Records that are deemed to be

complete without a medical source statement from a treating physician contain notes

that express the treating physician's views as to the claimant's residual functional

capacity, i.e., the treating physician's views can be divined from their notes, and it is

only a formal statement of opinion that is missing from the Record."); <u>La Torre v. Colvin</u>,

No. 14 CIV. 3615 (AJP), 2015 WL 321881, at *12 (S.D.N.Y. Jan. 26, 2015) ("Unlike the

ALJ in <u>Tankisi</u> . . . , ALJ Russak did not have even an informal assessment of La Torre's

limitations on which to rely in making his determination."); <u>Swanson</u>, 2013 WL 5676028,

at *5.

Moreau's case is likewise distinguishable from <u>Tankisi</u> on this basis.  The record

contains progress notes from Dr. Chozick and Dr. Mannam for dates on which Moreau

was treated at St. Francis.  <u>See</u> Tr. at 410–33.  These progress notes primarily discuss

Moreau's symptoms, diagnoses, and treatment plans.  <u>See</u> <u>id.</u>  They also report the

results of various physical and neurological examinations performed by the doctors on

Moreau, including assessments of her muscle tone, gait, language, and memory,

among other things.  <u>See</u> <u>id.</u>  However, the progress notes do not contain any

assessments of the scope of Moreau's work-related capabilities or limitations based on

the results of these examinations.  <u>See</u> <u>id.</u>  Thus, the record here contains neither a

formal nor an informal RFC assessment by a treating physician on which the ALJ could

have relied in making an RFC determination and is therefore less complete than the record in Tankisi.

Second, the record here is not sufficiently "extensive" or "voluminous" to negate the need for a treating source opinion on RFC.  See Tankisi, 521 Fed. App'x at 34.  In Tankisi, the record included an informal assessment of RFC from the treating physician, opinions from two consulting physicians, and an assessment from a state disability examiner.  See Hooper v. Colvin, 199 F. Supp. 3d 796, 814 (S.D.N.Y. 2016) (citing Tankisi, 521 Fed. App'x at 34).  In this case, the record contains no informal assessment of RFC from the treating physician, as discussed above, but does contain two opinions from examining sources and four assessments from state consultants who did not examine Moreau.  However, the court must assess the quality and scope of the opinions, not merely the quantity, in order to determine whether the record is sufficiently complete.  See Sanchez, 2015 WL 736102, at *6–*7 (noting that the consulting psychologist's statements, on which the ALJ appeared to rely, were equivocal); La Torre, 2015 WL 321881, at *12 (noting that the consultative examinations were insufficient to support the ALJ's RFC determination and, therefore, that the ALJ should have further developed the record).

Although the record in this case contains two reports from consulting psychologists who examined Moreau, the presence of a consulting examiner's report does not necessarily indicate that the record is robust enough to support the ALJ's decision without an opinion from a treating source.  Because the treating physician has the "opportunity to develop an informed opinion as to the physical status of a patient" over the course of treatment, the treating physician's opinion is "so much more reliable

than that of an examining physician who sees the claimant once and performs the same tests and studies as the treating physician." Hallett, 2012 WL 4371241, at *6. Some courts in this Circuit have therefore remanded for the ALJ to develop the record by obtaining a treating source opinion, even where the record contained the opinion of a consulting physician who examined the patient. See Downes, 2015 WL 4481088, at *14; Sanchez, 2015 WL 736102, at *6; La Torre, 2015 WL 321881, at *12. In Downes and Sanchez, the court noted that the consulting physician only examined the claimant once. See Downes, 2015 WL 4481088, at *14; Sanchez, 2015 WL 736102, at *6 ("Furthermore, the consulting physicians who examined Sanchez did so just once (both on the same day), whereas the consulting physician in Tankisi examined Tankisi twice.").

In Moreau's case, the two examining sources also each only examined Moreau once, Dr. Frazer on January 14, 2013, and Dr. McLean on July 23, 2014. See Stip. Facts at 7–8. In fact, the ALJ cited the fact that both Dr. Frazer and Dr. McLean only examined Moreau on one occasion as a reason for discounting their opinions. See Tr. at 37–38. The ALJ also accorded little weight to Dr. Frazer's opinion and partial weight to Dr. McLean's opinion. See id. The ALJ specifically noted that Dr. Frazer "did not opine about the claimant's limitations from her PTSD or provide any opinion regarding the claimant's ability to engage in work." See id. at 38. Thus, to the extent that the Commissioner attempts to point to these two opinions as indicating that the record is sufficiently complete, the court notes that the ALJ did not rely on Dr. Frazer's opinion in formulating the RFC and placed only limited reliance on Dr. McLean's opinion. For example, the RFC does not incorporate or address Dr. McLean's opinion that Moreau

"appeared to have neurocognitive limitations, including affect lability, concentration difficulties, and language impairments that affect her ability to maintain a 40 hour work week." See id. at 407.

Moreover, Dr. Frazer and Dr. McLean are both examining psychologists, not physicians. See Stip. Facts at 7, 9. Therefore, their examinations of Moreau only assessed her neurological and psychological limitations. See id. at 7–10. Neither provided an opinion as to Moreau's physical limitations on her ability to work. See id. Therefore, the record contains no treating or examining physician's opinion as to the physical aspects of Moreau's RFC, in which the ALJ determined she could perform light work, occasionally climb ramps and stairs, frequently balance, and occasionally crawl. See Tr. at 33. This is a substantial gap in the record that the ALJ failed to fill by not obtaining a treating physician's opinion on Moreau's RFC. See Hooper, 199 F. Supp. at 814 ("[F]or an ALJ to make a disability determination without seeking any treating physician opinion, there must be 'no obvious gaps in the administrative record,' and the ALJ must '[possess] a complete medical history.'" (quoting Rosa, 168 F.3d at 83 n. 5)); Downes, 2015 WL 4481088, at *15 ("[A] decision not to remand assumes that there are no obvious gaps in the record precluding the ALJ from properly assessing the claimant's residual functional capacity.").

The only medical opinions in the record that address the physical limitations in the RFC, then, are those of the two state medical consultants. See Stip. Facts at 4–6. None of the state consultants, however, examined Moreau, as both the state medical consultants and the state psychological consultants based their RFC assessments on a review of the available medical evidence in the record. See id. at 4–5. The ALJ gave

19

only partial weight to the four state consultant opinions "because other medical opinions are more consistent with the record as a whole." Tr. at 37. The ALJ states, "[B]ecause the State agency consultants did not have the benefit of treating the claimant personally, I have given more weight to the opinions of the claimant's aforementioned providers, which are consistent with the identified residual functional capacity." Id. He further notes that "the consultants' physical assessments did not adequately consider treatment records that show the claimant's seizure disorder caused her to experience intermittent seizures that caused her some loss of strength of the bilateral upper and lower extremities, some right-sided weakness, and headaches, which would result in some exertional limitations." Id.

Despite noting the problems with the state medical consultants' opinions, the ALJ did not seek to obtain additional information from an examining or treating source on Moreau's physical limitations. Although the ALJ claims to have given more weight to "more consistent" medical opinions in the record, there are no other medical opinions as to Moreau's physical limitations. As to her psychological limitations, the ALJ gave only partial weight to Dr. McLean's opinion and little weight to Dr. Frazer's opinion. Thus, the gap in the record created by the absence of a treating source opinion on RFC is further underscored by the ALJ's discounting of the medical opinions that do exist in the record. See Sanchez, 2015 WL 736102, at *6–*7; La Torre, 2015 WL 321881, at *12.

The record in Moreau's case, then, is a "far cry from that in Tankisi." See Sanchez, 2015 WL 736102, at *6. In the absence of a formal or informal assessment of RFC by a treating source and an assessment of Moreau's physical limitations by any examining source, the record is not "sufficiently comprehensive to permit an informed

20

finding by the ALJ" as to Moreau's RFC.  See id.  Despite this gap, there is no indication

in the record that the ALJ attempted to contact St. Francis or obtain an RFC

assessment from any treating source.  See Tr. at 366 (identifying for the Appeals

Council the ALJ's failure to request a medical source statement from the treating

sources at St. Francis).  Nor has the Commissioner pointed this court to any such

attempts.  The ALJ has also offered no reasonable explanations for his failure to obtain

a treating source opinion.  See Ubiles v. Astrue, No. 11-CV-6340T MAT, 2012 WL

2572772, at *8 (W.D.N.Y. July 2, 2012) ("Without some reasonable explanation for the

ALJ's failure to obtain these records, the [C]ourt is not satisfied that the ALJ fulfilled his

affirmative obligation to develop the record." (quoting Hilsdorf v. Comm'r of Social Sec.,

724 F. Supp. 2d 330, 345 (E.D.N.Y.2010)).

        Therefore, the court concludes that, if the ALJ was correct in treating the

unsigned opinions as non-treating sources, he then failed to fulfill his duty to develop

the record and, in this case, such failure is legal error that justifies remand.  See Wilbur

v. Colvin, No. CIV.A. 5:13-110, 2014 WL 2434955, at *3 (N.D.N.Y. May 30, 2014) ("An

administrative law judge's failure to develop the record adequately is an independent

ground for vacating the administrative law judge's decision and remanding the case.").

On remand, the ALJ should obtain a medical opinion on RFC from Moreau's treating

physicians, including Dr. Mannam and Dr. Chozick.

                2.        If the Unsigned Opinions Are Considered Treating Source
                          Opinions

        In contrast to the Commissioner and the ALJ, who considered the unsigned

opinions to be non-treating sources, Moreau argues that the opinions should have been

evaluated as though they were authored by Dr. Mannam.  See Mot. to Reverse Mem. at

5.  As such, Moreau argues that the opinions should have been afforded the deference required by the treating source rule.  See id.  As noted above, the treating source rule requires the ALJ to provide good reasons for the weight given to the treating source's opinion if the opinion is not given controlling weight.  See 20 C.F.R. § 404.1527(c)(2) (2017); DiMauro v. Berryhill, No. 3:15CV1485 (DJS), 2017 WL 1095024, at *8 (D. Conn. Mar. 23, 2017) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).  Moreau argues that the ALJ failed to do so here in assigning only partial weight to the unsigned opinions because the ALJ stated that the opinion is "only partially consistent with the record that showed the claimant had XXX," without specifying what "XXX" is.  See Mot. to Reverse Mem. at 5.  Moreau concludes that this failure makes it "impossible for the reader to follow the ALJ's reasoning for giving partial weight to the opinion."  Id.

The Commissioner argues that, even if the unsigned opinions should have been considered treating source opinions, the ALJ nonetheless provided good reasons for giving them only partial weight.  See Mot. to Affirm Mem. at 8.  First, the Commissioner points to the ALJ's statement that "the opinions are of limited value as they do not provide an assessment of the claimant's limitations, provide a function-by-function analysis, or provide a long-term or permanent assessment of the claimant's capabilities."  Tr. at 37.  Second, the Commissioner argues that the unsigned opinion's statement that Moreau cannot work is "not a medical opinion, but rather an opinion on the ultimate issue of disability, which is reserved to the commissioner."  See Mot. to Affirm Mem. at 8.  The Commissioner argues that, as such, the opinion is not entitled to controlling weight under the treating source rule.  See id.

The unsigned opinion in question states, "Kristin had Brain Surgery and is unable to work untill [sic] further notice. 12/20/2014 [Patient] had a Stroke and is taking medication Kepra and Percocet as well." Tr. at 419. The Commissioner is correct that the issue of whether the claimant is disabled is an ultimate issue reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(1) (2017). Therefore, a treating physician's opinion on the ultimate issue of disability is not entitled to controlling weight under the treating source rule. See 20 C.F.R. § 404.1527(d)(3); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").[5] Nonetheless, the ALJ "must provide good reasons for the weight, if any, he gives to the treating source's opinion, even when the opinion goes to the issue of disability." Wiebicke v. Astrue, No. 10 CIV. 3371 (BSJ) (FM), 2012 WL 2861681, at *11 (S.D.N.Y. July 2, 2012).

The parties' focus on the weight accorded to the unsigned opinion's statement that Moreau cannot work is misplaced. See Kelsey v. Colvin, No. CIV.A. 5:13-1128, 2015 WL 339543, at *8 (N.D.N.Y. Jan. 23, 2015) (considering a similar opinion of total disability to be a "red herring" because the statement was made in the context of surgery and may have intended a different meaning of "disabled" than is understood in the social security context). Rather, like the Kelsey court, this court considers the more relevant inquiry to be whether, given the vagueness of the unsigned opinion and its lack of explanation or detail, the ALJ should have recontacted the source at St. Francis to

---

[5] The court notes, however, that this argument is a post hoc rationalization offered by the Commissioner, which was not raised by the ALJ in his Decision. See Tr. at 37; Pickett v. Colvin, No. 3:13-CV-1295 (JCH), 2015 WL 1321017, at *3 (D. Conn. Mar. 23, 2015) ("[A] reviewing court may not accept appellate counsel's post hoc rationalizations for agency action . . . ." (quoting Snell, 177 F.3d at 134)).

obtain a complete opinion.  See id. ("A much more relevant and pressing issue, which both parties recognize but treat almost summarily is, whether the record was adequately developed for ALJ Fein to make a fully-informed residual functional capacity finding.").

As noted above, the ALJ has an affirmative duty to develop the record.  See Rosa, 168 F.3d at 79.  Where the record contains a treating physician opinion, but the opinion is incomplete, unclear, or inconsistent, the ALJ's duty to develop the record requires the ALJ to seek additional information.  See Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (holding that the ALJ should have recontacted the physician where the physician's opinion was "remarkably vague"); Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998); Cammy v. Colvin, No. 12-CV-5810 (KAM), 2015 WL 6029187, at *16 (E.D.N.Y. Oct. 15, 2015); Ashley v. Comm'r of Soc. Sec., No. 5:14-CV-00040, 2014 WL 7409594, at *3–*4 (N.D.N.Y. Dec. 30, 2014).  The ALJ should not reject the treating physician's opinion "without first attempting to fill any clear gaps in the administrative record."  Cammy, 2015 WL 6029187, at *16 (quoting Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)).  Often, the most effective method of seeking additional information is by recontacting the treating physician regarding his or her incomplete opinion.[6]

---

[6] Previously, the SSA's regulations required the ALJ to first recontact the treating physician when additional evidence was required.  See 20 C.F.R. § 404.1512(e)(1) (2011) ("We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.").  However, the regulations were amended in 2012 to give the ALJ more flexibility in determining how best to obtain additional information.  See How We Collect and Consider Evidence of Disability, 77 FR 10651-01, at 10651.  The regulations now provide that recontacting the treating physician is one option for obtaining additional evidence.  See 20 C.F.R. § 404.1520b(b)(2)(i) (2017) ("We may recontact your medical source.").

While this amendment has given the ALJ greater flexibility in determining how to obtain additional information, it has not eliminated the ALJ's obligation to develop the record when additional information is needed due to the vagueness, incompleteness, or inconsistency of the treating source's opinion.  See Gabrielsen v. Colvin, No. 12-CV-5694 (KMK) (PED), 2015 WL 4597548, at *6 (S.D.N.Y. July 30, 2015) ("Nonetheless, courts in the Second Circuit have concluded, citing these regulations, that the ALJ still has an obligation to re-contact the treating physician in some cases. . . . Accordingly, the change in the regulations does not mean that the ALJ here had no duty to re-contact the treating physician."); Nunez v.

In this case, the unsigned opinions were undoubtedly vague and incomplete.

The March 7, 2014 opinion was primarily a statement on the ultimate issue of disability

reserved for the Commissioner. The ALJ and the Commissioner both agree that part of

the reason the ALJ accorded the opinion little weight was because the opinions "do not

provide an assessment of the claimant's limitations, provide a function-by-function

analysis, or provide a long-term or permanent assessment of the claimant's

capabilities." Tr. at 37. Rather than reject the opinion on this basis, the ALJ should

have recontacted the treating physician, presumably Dr. Mannam according to Moreau,

to request additional information explaining the statement on disability and providing a

function-by-function assessment of Moreau's work-related limitations. Regarding the

RFC in particular, "it is unreasonable to expect a physician to make, on his own accord,

the detailed functional assessment demanded by the Act in support of a patient seeking

SSI benefits. It was incumbent on the ALJ to request a function-by-function assessment

of Plaintiff's physical limitations from [the physician] and recontact [the physician] for

clarification of his 'vague and non-specific' limitations." Ubiles, 2012 WL 2572772, at *9;

see also Geronimo v. Colvin, No. 13-CV-8263 (ALC), 2015 WL 736150, at *5 (S.D.N.Y.

Feb. 20, 2015) ("[A] treating physician's failure to include this type of support for the

findings in his report does not mean that such support does not exist; he might not have

_____

Berryhill, No. 16 CIV. 5078 (HBP), 2017 WL 3495213, at *16 (S.D.N.Y. Aug. 11, 2017) ("[T]he current amended regulations . . . give the ALJ more discretion to determine the best way to resolve the inconsistency or insufficiency based on the facts of the case . . . . However, the regulations continue to contemplate the ALJ recontacting treating physicians where the additional information needed is directly related to that source's medical opinions." (alterations in original) (internal quotation marks and citations omitted)). The SSA acknowledges that, in many cases, recontacting the treating physician will still be the most effective and efficient means of obtaining additional information. See 77 FR 10651-01, at 10652 ("In fact, we expect that adjudicators will often contact a person's medical source(s) first whenever the additional information sought pertains to findings, treatment, and functional capacity, because the treating source may be the best source regarding these issues.").

provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case." (quoting Rosa, 168 F.3d at 80)).

As with the failure to obtain a treating source opinion discussed above, however, failure to recontact a treating source for additional information is not per se error. See Prince v. Berryhill, No. 3:16-CV-01472 (JCH), 2018 WL 495677, at *4 (D. Conn. Jan. 19, 2018) ("If it is not always error to decide a disability claim without a treating physician opinion, it follows that the ALJ is not always required to re-contact a treating physician where the opinion is inadequate."). When determining whether the failure to seek additional information regarding an incomplete or inconsistent treating source opinion is error requiring remand, courts in this Circuit have applied the same standard from Tankisi articulated above. See id. ("Assessing whether it was legal error for an ALJ to fail to request clarification from a treating physician is a case-specific inquiry that turns on whether an ALJ could have reached an informed decision based on the record."); Wilbur, 2014 WL 2434955, at *3–*4.

Thus, some courts—faced with treating source opinions that opined on the ultimate issue of disability, like the unsigned opinions here—acknowledged that such opinions were not entitled to deference, but nonetheless remanded to the ALJ to recontact the treating source for additional information. See Leroy v. Colvin, 84 F. Supp. 3d 124, 132–34 (D. Conn. 2015); Kelsey, 2015 WL 339543, at *8–*9; Swanson, 2013 WL 5676028, at *5; Adamik v. Astrue, No. 07-CIV-10283 (JSR) (HBP), 2009 WL 6337910, at *16 (S.D.N.Y. Aug. 3, 2009), report and recommendation adopted, No. 07-CIV-10283 (JSR), 2010 WL 1428121 (S.D.N.Y. Apr. 8, 2010). Other courts, however, held such remand to be unnecessary because, even without further development of that

treating source's opinion, the record was sufficiently complete for the ALJ to make a substantially supported RFC determination. See Hanson v. Comm'r of Soc. Sec., No. 315-CV-0150 (GTS) (WBC), 2016 WL 3960486, at *10 (N.D.N.Y. June 29, 2016), report and recommendation adopted sub nom. Hanson v. Colvin, No. 315-CV-150 (GTS) (WBC), 2016 WL 3951150 (N.D.N.Y. July 20, 2016); Wilbur, 2014 WL 2434955, at *3–*4.

Moreau's case is more similar to the first set of cases above requiring remand. For the reasons already discussed above, the record before the ALJ here was not complete because there was no treating source opinion on RFC, formal or informal, there was no examining source opinion on Moreau's physical limitations, and the ALJ discounted all of the medical opinions in the record to some degree.[7] Therefore, assuming, arguendo, that Moreau is correct that the unsigned opinion came from a treating source, the ALJ still erred by failing to develop the record. Even if the ALJ did not have to give deference to the unsigned opinion's conclusion as to the ultimate issue of disability, the ALJ did have an obligation to recontact the treating source to seek additional information for the function-by-function analysis that was lacking.

In conclusion, then, regardless of whether the ALJ should have treated the unsigned opinions as treating source opinions or not, the court's conclusion is the same. The ALJ erred by failing to develop the record to obtain a treating source opinion on Moreau's RFC, and the court remands the case for the ALJ to do so.[8] On remand, the

---

[7] See, supra, pages 15–21.

[8] As noted previously in footnote 4, the fact that one of the unsigned opinions was more favorable to Moreau than the other does not affect the court's analysis. See Mot. to Affirm Mem. at 8 (arguing that Moreau focuses on the opinion that is favorable to her while overlooking the opinion that is not). The ALJ's treatment of the two opinions is the same. See Tr. at 37. Indeed, if the opinions are in fact

ALJ should recontact St. Francis to identify the author of the unsigned opinions. If the unsigned opinions were authored by a treating source, the ALJ should recontact that source for an explanation of the opinion that Moreau cannot work until further notice and for a function-by-function analysis of Moreau's work-related capabilities and limitations. If the unsigned opinions were not authored by a treating source, the ALJ would nonetheless be wise to seek clarification and explanation from that source, but should also contact a treating source to provide another opinion on Moreau's RFC. In either case, the ALJ's obligation to fully develop the record requires him to obtain a treating source opinion on the RFC. The court notes that the record appears to indicate that Moreau's treating physicians include Dr. Chozick, Dr. Mannam, and Dr. Carissa Monterroso. See Tr. at 366, 410–33, 442–447. The ALJ would therefore be prudent to obtain medical opinions from each of them, as well as any other treating physicians that the ALJ identifies.

      B.    <u>Additional Issues</u>

Because the court is already remanding the case to the ALJ for failure to develop the record, the court need not decide whether Moreau's other arguments constitute legal error sufficient to justify remand in themselves. <u>See, e.g.</u>, <u>Fly v. Colvin</u>, No. 3:14-CV-1840, 2015 WL 5124957, at *5 (N.D. Ind. Aug. 31, 2015); <u>Waltemire v. Colvin</u>, No. 13-CV-1283-DDC, 2014 WL 3809189, at *12 (D. Kan. Aug. 1, 2014); <u>Lowe v. Colvin</u>, No. 2:12-CV-524-PRC, 2014 WL 4373637, at *8 (N.D. Ind. Sept. 3, 2014). Instead, the court discusses the remaining issues to advise the ALJ to use the opportunity on

---

inconsistent, that inconsistency adds further reason for the ALJ to recontact the source to reconcile the inconsistency.

remand to address any problems, in the interest of avoiding the need for subsequent remands. Additionally, because many parts of the ALJ's decision were likely based on the record as a whole, the court notes that the ALJ's analysis may change when the record is fully developed. It would therefore be appropriate for the ALJ to revisit his conclusions at other steps of the Decision as well.

First, Moreau argues that the ALJ failed to apply the treating source rule to the unsigned opinions. See Mot. to Reverse Mem. at 4–5. When the ALJ has recontacted St. Francis to identify the source of the unsigned opinions, he will be able to determine whether the treating source rule is applicable to the opinions or not. In either case, the ALJ will need to obtain a complete treating source opinion assessing Moreau's RFC, whether by recontacting the source of the unsigned opinion for additional information or by obtaining a new medical opinion from a treating source. The ALJ should then be sure to apply the treating source rule to that opinion.

The treating source rule requires that "[a] 'treating physician's' opinion is 'given controlling weight as long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Nieves v. Colvin, No. 3:14-CV-01736, 2017 WL 1050569, at *4 (D. Conn. Mar. 20, 2017); see 20 C.F.R. § 404.1527(c)(2) (2017). If controlling weight is not given, "some weight may still be attached to that opinion, and the ALJ must still designate and explain the weight that is actually given to the opinion." Schupp v. Barnhart, No. 3:02-CV-103 (WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004). The SSA provides a list of factors that should be considered in assigning weight to the medical opinion: (1) examining relationship; (2) treatment relationship,

including length, frequency of examination, and nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. <u>See</u> 20 C.F.R. § 404.1527(c)(2)–(6) (2017). The SSA's regulations provide, "We will always give good reasons in our notice of determination or decision for the weight we give [the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2).

The court additionally notes that, regardless of whether the unsigned opinions are considered treating sources or not,[9] the current reasons stated in the ALJ's decision for assigning them only partial weight should be revisited on remand. After full development of the record, the opinions should no longer be unsigned, contain only a statement on the ultimate issue of disability, or lack an assessment of Moreau's limitations or a function-by-function analysis. <u>See</u> Tr. at 37. The only remaining reason offered by the ALJ, then, is that "these opinions are only partially consistent with the record that showed the claimant had XXX." <u>See id.</u> This is clearly incomplete and insufficient to satisfy the ALJ's obligation to give good reasons for the weight given, as the ALJ appears to have forgotten to complete his sentence by replacing the template text. On remand, upon a fully developed record, the ALJ should reassess the weight given to the unsigned opinions and, if they are treating source opinions, articulate good reasons for the weight given.

Second, Moreau argues that the ALJ erred in giving only partial weight to Dr. McLean's opinion. <u>See</u> Mot. to Reverse Mem. at 8–9. Moreau argues that Dr. McLean's opinion is consistent with her examination findings and with the state

---

[9] Even if the unsigned opinions are not from a treating source, non-treating source opinions must also be considered by the ALJ and accorded appropriate weight. <u>See</u> SSR 06-03p, at *4; <u>Godin v. Astrue</u>, No. 3:11-CV-881 (SRU), 2013 WL 1246791, at *4 (D. Conn. Mar. 27, 2013).

psychological consultants' opinions as to Moreau's limitations in maintaining concentration.  See id.  The ALJ articulated two reasons for giving only partial weight to Dr. McLean's opinion.  See Tr. at 37.  First, "the medical evidence of record does not show that the claimant's symptoms are so severe as to support Dr. McLean's opined limitations."  Id.  Second, "Dr. McLean only evaluated the claimant on one occasion and was not a treating provider."  Id.

Because the court is remanding the case to the ALJ to further develop the record, the medical evidence of record, on which the ALJ's first reason relies, will likely change.  Therefore, without deciding whether the ALJ's prior assignment of weight to Dr. McLean's opinion was legal error or not, the court instructs the ALJ to reassess the weight given to Dr. McLean's opinion.  In doing so, the ALJ should consider whether Dr. McLean's opinion is consistent with the entire medical record, including the newly obtained medical evidence and opinions from Moreau's treating physicians.

The court further recommends that the ALJ revisit the weight given, not only to Dr. McLean's opinion, but also to the other medical opinions in the record as well because the medical record influenced the ALJ's assessment of each of these other opinions as well.  See id. at 37 ("The State agency medical consultants' physical assessments and psychological consultants' mental assessments are given partial weight because other medical opinions are more consistent with the record as a whole."); id. at 37–38 ("Dr. Frazer's opinion is generally inconsistent with the medical evidence as the record does not contain persistent or severe symptoms from this condition or any significant treatment that would establish a moderate impairment of PTSD.").  When the record is further developed on remand, the ALJ's analysis of these

medical opinions may change. It would therefore be appropriate for the ALJ to revisit his conclusions with regard to all of the medical opinions on RFC in light of the full record, including the new opinion evidence from one or more treating physicians.[10]

Third, Moreau argues that the ALJ failed to address the discrepancy between the two state psychological consultants' opinions on her limitations in social functioning. See Mot. to Reverse Mem. at 9. Dr. Johnson opined that Moreau had moderate difficulties in maintaining social functioning. See Tr. at 121, 125. Dr. Swanson opined in one part of her report that Moreau had mild difficulties in maintaining social functioning, see id. at 139, and elsewhere in her report that Moreau had no limitations in social interaction, see id. at 143, 158. The ALJ did not address this conflict in the opinions, but rather assigned partial weight to all of the state consultants' opinions without distinguishing between them. See id. at 37. The ALJ did not include any limitations on social functioning in the RFC. See id. at 33.

When the record contains conflicting opinions, "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record." Mandro v. Berryhill, No. 3:16-CV-1137 (JCH), 2017 WL 4071104, at *15 (D. Conn. Sept. 14, 2017) (quoting Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998)). "Because '[g]enuine conflicts in the medical evidence are for the Commissioner to resolve,' the ALJ was entitled to choose between properly submitted medical opinions' and to consider 'other substantial evidence in the record . . .' in determining [the claimant's] residual functional capacity." Johnson v.

_____

[10] Because, on remand, the ALJ will reconsider the weight given to each medical opinion in light of the whole record, in addition to obtaining additional medical opinions from treating sources, it is unnecessary for the court to address Moreau's argument that the ALJ "played doctor" in his prior Decision, as much of that analysis is likely to change.

<u>Berryhill</u>, No. 3:16-CV-01050 (SRU), 2017 WL 2381272, at *6 (D. Conn. June 1, 2017) (citations omitted). However, "an ALJ's failure to reconcile materially divergent RFC opinions of medical sources is a ground for remand." <u>Oliphant v. Astrue</u>, No. 11-CV-2431, 2012 WL 3541820, at *16 (E.D.N.Y. Aug. 14, 2012).

In this case, the court need not decide whether Dr. Johnson's and Dr. Swanson's conflicting opinions on Moreau's social functioning limitations are sufficiently material to warrant remand. Because the court is already remanding the case to the ALJ for other reasons, the court instructs the ALJ to revisit this additional aspect of the RFC as well. Specifically, the ALJ should articulate how he reconciles the conflict in Dr. Johnson's and Dr. Swanson's medical opinions and provide reasons that make clear that his determination is supported by substantial evidence in the record.

Fourth, Moreau argues that the ALJ failed to account for her use of a cane in the RFC. <u>See</u> Mot. to Reverse Mem. at 10. The Commissioner argues that the ALJ addressed Moreau's claims that she uses a cane and articulated reasons for declining to include a limitation for cane use in the RFC. <u>See</u> Mot. to Affirm Mem. at 6–7. The court notes that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2016). Thus, if the ALJ's factual findings are supported by substantial evidence, the court does not substitute its judgment for the ALJ's. <u>See</u> <u>Yancey v. Apfel</u>, 145 F.3d 106, 111 (2d Cir. 1998).

Regarding Moreau's use of a cane, the Commissioner is correct that the ALJ articulated reasons for discrediting Moreau's testimony that she needs a cane and for then declining to include the use of the cane in the RFC. <u>See</u> Tr. at 36. However, the

ALJ's reasons for doing so relied on the inconsistency of her testimony with "the medical evidence of record as a whole." Id. On remand, as noted above, because the ALJ is instructed to further develop the record to obtain a treating source opinion, the "medical evidence of record as a whole" may change. Therefore, the ALJ should reconsider his assessment of Moreau's testimony and whether her need for a cane should be included in the RFC in light of the full record, including the treating source opinions. For example, the ALJ's prior reasoning pointed to the fact that "the medical evidence of record does not contain a prescription for a cane from the claimant's providers." Id. It would therefore be prudent for the ALJ to request information from Moreau's treating physicians regarding her use of a cane when obtaining their assessment of her RFC.

Finally, the court notes that full development of the record may also call into question the remaining steps of the ALJ's analysis. See Sanchez, 2015 WL 736102 at *9. Based on the incomplete record, the ALJ weighed the medical opinions on RFC and determined Moreau's RFC. Then, based on that RFC, the ALJ assessed whether there were jobs in the national economy that Moreau could perform. Therefore, a complete record may require the ALJ to reconsider his conclusions at steps four and five as well.

## VI. CONCLUSION

For the reasons stated above, the Motion to Reverse or Remand the Decision of the Commissioner is **GRANTED**. The case is remanded to the ALJ for proceedings consistent with this Ruling. The Motion to Affirm the Decision of the Commissioner is **DENIED**.

The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the District Judge who issued this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 13th day of March, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge